executors "unreasonably resisted or neglected" the payment of the claim, and the plaintiff is not entitled to recover the costs of the reference.

The costs, however, in a proceeding of this character, do not include the disbursements. In a well-considered and unanimous opinion by the old general term of the Fourth department (Niles v. Crocker, 88 Hun, 312, 34 N. Y. Supp. 761), Mr. Justice Martin writing, it was held that the creditor was entitled to recover his disbursements in a proceeding of this character; that the certificate mentioned by section 1836, as to unreasonable refusal or neglect to pay, was required only to enable the party to recover costs; and that it was not required for a recovery of disbursements. To the same effect is Hallock v. Bacon, 64 Hun, 90, 19 N. Y. Supp. 91.

The judgment should be modified by striking out the allowance of costs, but not of disbursements, and as modified affirmed, without costs of this appeal to either party. All concur.

---

CRUIKSHANK v. PRESS PUB. CO.

(Supreme Court, Special Term, Kings County. July, 1900.)

1. PLEADING—DENIAL—DEFENSE.
    A denial is not properly a defense, since a defense is an allegation of new matter not admissible under a denial.

2. SAME—IRRELEVANT MATTER.
    In an action against a newspaper for publishing evidence introduced in a divorce proceeding for adultery, an allegation in the answer that plaintiff had illtreated his wife should be stricken out, as scandalous and irrelevant.

3. SAME—PLEADING EVIDENCE.
    Where the answer in an action against a newspaper for publishing evidence introduced in a divorce proceeding for adultery alleged the truth of the publication, an additional allegation setting out the judgment for divorce should be stricken, as a pleading of evidence.

4. SAME—SURPLUSAGE.
    A repetition of a denial, incorporated into new matter pleaded as a defense, should be stricken out as surplusage.

5. SAME.
    Where part of a pleading has been stricken, a repetition of the same matter later in the pleading must also be stricken out.

Action by William J. Cruikshank against the Press Publishing Company. Motion by plaintiff to strike out part of the answer as irrelevant and redundant. Granted.

The body of the complaint is as follows:

"2. That on or about October 18, 1898, the defendant, which is the publisher and proprietor of a newspaper of large circulation known as 'The World,' printed and published in said newspaper, the following language of and concerning the plaintiff, to wit: 'The trial of the divorce suit brought by Maud Cruikshank against Dr. William J. Cruikshank was before Justice Johnson in the supreme court, Brooklyn, yesterday. * * * In her complaint Mrs. Cruikshank names Martha Dorlon Lowe, as co-respondent. Mrs. Lowe is a vocalist of note. She was soloist in Dr. Lyman's church, Court and President streets, and has also appeared at concerts given at Manhattan Beach and Prospect Park. Wife is also accused. Dr. Cruikshank in his defense denies the charges and sets up a counterclaim in which he accuses his wife of un-

faithfulness. He names Seth A. Keeny, nephew of Seth L. Keeny, ex bridge trustee, and Henry E. Frankenberg, Mrs. Cruikshank's former lawyer, as corespondents. * * * Photographs Produced. A number of flashlight photographs alleged to have been taken of Mrs. Lowe's home, at No. 18 Berkeley Place, were produced in court. The photographs were said to have been taken between the hours of 10 and 12 o'clock at night from the upper windows and front stoop of No. 11 Berkeley Place, almost opposite Mrs. Lowe's residence, and were incriminating to her and Cruikshank.' * * * Police Sergeant Foster, the plaintiff's father, told how, when he had suspected his son-in-law, he had established a spy system and had taken the photographs of Cruikshank and Mrs. Lowe.' * * *

"3. That by the following language contained in the above publication, viz.: 'Divorce Evidence Based on Pictures. Mrs. Maud Cruikshank charges the doctor with being unfaithful. Photographs to prove it. Flashlights taken of Mrs. Martha Dorlon Lowe's house at midnight. A number of flashlight photographs alleged to have been taken of Mrs. Lowe's house at No. 18 Berkeley Place were produced in court. The photographs were said to have been taken between the hours of 10 and 12 o'clock at night from the upper windows and front stoop of No. 11 Berkeley Place almost opposite to Mrs. Lowe's residence and were incriminating to her and Cruikshank. Police Sergeant Foster, the plaintiff's father, told how, when he had suspected his son-in-law, he had established a spy system, and had taken the photographs of Cruikshank and Mrs. Lowe,' the defendant meant to say and to impute to this plaintiff and the meaning of the said language was that upon the trial of a certain action for divorce upon charges of adultery instituted by one Maud Cruikshank against William J. Cruikshank, this plaintiff, and tried in this court and county, the plaintiff had produced in evidence certain photographs taken of this plaintiff and of the said Martha Dorlon Lowe by flashlight and that the said photographs so alleged to have been taken showed this plaintiff and the said Martha Dorlon Lowe under circumstances and in a situation which proved this plaintiff and the said Martha Dorlon Lowe to have been guilty of adultery."

The answer is as follows:

"The defendant above named, by Bowers & Sands, its attorneys, answering the complaint in this action by this its amended answer, respectively shows and alleges:

"For a first, separate and distinct defence to the alleged cause of action set forth in the complaint:

"I. The defendant admits that it is a domestic corporation duly organized and doing business under the laws of the state of New York.

"II. The defendant denies each and every other allegation in the complaint contained.

"For a second, separate and distinct defence to the alleged cause of action set forth in the complaint and in justification of the alleged libellous matter therein contained:

"I. The defendant admits that it is a domestic corporation organized and doing business under the laws of the state of New York.

"II. The defendant alleges that on or about the 18th day of October, 1898, it published in its newspaper 'The World' an article, of which a true copy is hereto annexed marked 'A' and made a part of this amended answer.

"III. The defendant denies that said article Exhibit 'A' of this amended answer intended to or did mean or say that upon the trial of a certain action for divorce instituted by one Maud Cruikshank against one William J. Cruikshank, the plaintiff herein, and tried in the supreme court of the state of New York, Kings county, that Martha D. Lowe or any other person had produced in evidence certain photographs taken of the plaintiff or the said Martha D. Lowe by flashlight, or that the said photographs showed the plaintiff herein or the said Martha D. Lowe under any circumstances or situations which might prove the plaintiff or the said Martha D. Lowe to have been guilty of adultery. Except as heretofore specifically admitted or denied the defendant denies each and every allegation contained in the third paragraph of the complaint.

"IV. The defendant denies that the said article Exhibit 'A' of this amended answer was or is false, defamatory or malicious or was published maliciously.

"V. The defendant denies that by reason of the publication of Exhibit 'A' of this amended answer, the plaintiff or any other person was subject to public humiliation or odium, or contempt, or was injured in his reputation or in his vocation as a physician in the sum of twenty-five thousand dollars, or any other sum.

"VI. The defendant further alleges on information and belief, that on or about December 2, 1885, William J. Cruikshank, the plaintiff herein, and Maud Foster were married, and have as issue of said marriage, one child, Marion, aged about ten years, and that in or about the month of June, 1896, said Maud Cruikshank separated from the said William J. Cruikshank, the plaintiff herein.

"VII. The defendant further alleges on information and belief that since said date the said Maud Cruikshank has not lived with or occupied the same house as the said William J. Cruikshank, the plaintiff herein.

"VIII. The defendant further alleges on information and belief that the cause of the separation between the said Maud Cruikshank and her said husband, the plaintiff herein, was his cruel and inhuman treatment of her, which treatment defendant alleges on information and belief extended over a period of some five years prior to June, 1896, and because of her discovery of the fact that he was indulging in adulterous intercourse with one Martha D. Lowe.

"IX. Defendant further alleges, on information and belief, that in the month of June, 1896, the said Maud Cruikshank commenced an action in the supreme court, county of Kings, against the said William J. Cruikshank, the plaintiff herein, for an absolute divorce, alleging as her cause of action that the said William J. Cruikshank, the plaintiff herein, has committed adultery with the said Martha D. Lowe, on May 24, 1896, on several other dates before the said date, and thereafter. That subsequently an answer to the said complaint was interposed by said William J. Cruikshank, the plaintiff herein. That thereafter upon the issue so joined an order was made referring the action to Frederick H. Cooke, Esq., as referee, to hear and determine the same, and that in obedience to the said order, the said Cooke, as referee, tried the issues in the said action for divorce in the months of November and December, 1896, and that subsequently, the said referee filed a report and decision, which report and decision was to the effect that the said William J. Cruikshank, the plaintiff herein, had committed adultery with the said Martha D. Lowe on June 11, 1896, and found as matter of law that the said Maud Cruikshank was entitled to a decree of divorce from her said husband, the plaintiff herein, as prayed for in her said complaint. The defendant begs leave for greater certainty to refer to and make a part of this amended answer, the pleadings and all other papers in the said action for divorce, as aforesaid, with like effect as if here fully set forth, and will offer the same in evidence at the trial of this action.

"X. The defendant alleges, upon information and belief, that on or about the 31st of December, 1896, a certain decree was entered in the supreme court, Kings county, which decree dissolved the marriage between said Maud Cruikshank and the said William J. Cruikshank, the plaintiff herein, and which decree was made upon the decision and report of the said Frederick H. Cooke, as referee.

"XI. The defendant further alleges, upon information and belief, that in or about the month of July, 1897, more than six months after the entry of the decree dissolving the marriage between said Maud Cruikshank and the said William J. Cruikshank, the plaintiff herein, the latter applied to the supreme court to set aside the said decree, and that such application was thereafter granted, and the said William J. Cruikshank, the plaintiff herein, was given permission to serve a supplemental answer, which was subsequently served.

"XII. The defendant further alleges, upon information and belief, that the issues raised by the said amended or supplemental answer, were framed by the court, and that subsequently they came on for hearing before Mr. Justice Johnson and a jury in the supreme court, Kings county, on or about the 17th of October, 1898, and that in the course of the said trial, and after the opening of the counsel for the said Maud Cruikshank, Almet R. Latson, Esq., stated substantially the matters complained of in the complaint in this action, as appearing in Exhibit 'A' thereof.

"XIII. The defendant further alleges on information and belief, that on the said trial of this action, the said Maud Cruikshank was represented by Almet R. Latson, Esq., and said William J. Cruikshank, the plaintiff herein, was represented by Charles J. Patterson, as counsel.

"XIV. The defendant further alleges on information and belief, that the said William J. Cruikshank committed adultery with the said Martha D. Lowe at No. 18 Berkeley Place in the city of Brooklyn on the 24th day of May, 1896, on the 1st day of June, 1896, on the 2d day of June, 1896, on the 5th day of June, 1896, on the 11th day of June, 1896, on the 12th day of June, 1896, on the 15th day of June, 1896, on the 27th day of May, 1896, and on other dates from the year 1892 to the year 1896, inclusive.

"XV. The defendant further alleges on information and belief that during the greater part of the married life of the said William J. Cruikshank, the plaintiff herein, and Maud Cruikshank, said William J. Cruikshank, the plaintiff herein, treated his wife in a cruel and inhuman manner, and that he was in the habit of beating her with instruments of various kinds and with his fists and that he struck her in the face and on the body and that he on more than one occasion made threats to kill her, and that in the year 1895 he attempted to carry out his threats made to kill her by seizing her by the throat and choking her.

"XVI. The defendant further alleges on information and belief, that during the whole of the time of the continuance of the adulterous intercourse between the said plaintiff herein and the said Martha D. Lowe, the said Martha D. Lowe was well acquainted with the said Maud Cruikshank and knew her to be the wife of said William J. Cruikshank, the plaintiff herein, and that the said Martha D. Lowe was aware that the said William J. Cruikshank, the plaintiff herein, neglected, abused and maltreated his wife as herein alleged, and that the said Martha D. Lowe was aware of the fact that her intimacy with the said plaintiff herein was the cause of the disagreements between the said William J. Cruikshank and his said wife.

"XVII. The defendant further alleges on information and belief, that several times prior to October 18, 1898, the said Martha D. Lowe was interviewed by said Maud Cruikshank, who at such interviews requested the said Martha D. Lowe to break off her intimacy with the plaintiff herein, and to discontinue the relations that existed between said Martha D. Lowe and the said William J. Cruikshank, the plaintiff herein, but that the said Martha D. Lowe ignored such requests.

"XVIII. The defendant further alleges on information and belief, that the said Martha D. Lowe, together with the said William J. Cruikshank, is responsible for the unhappiness and subsequent breaking off of the marriage relations between the said Maud Cruikshank and the said William J. Cruikshank. the plaintiff herein.

"XIX. And the defendant further alleges on information and belief, that the said Martha D. Lowe was the cause of the said William J. Cruikshank, the plaintiff herein, deserting his said wife and was the cause of his cruel and brutal treatment towards her, and the cause of their final separation.

"XX. The defendant begs leave, for greater certainty, to incorporate and make a part of this amended answer, with like effect as if here fully set forth, the pleadings, testimony, exhibits, the opening and summing up of counsel, the charge and all other papers and proceedings connected with the said trial so had in the county of Kings, commencing on or about the 17th day of October, 1898, wherein Maud Cruikshank was plaintiff and William J. Cruikshank, the plaintiff herein, was defendant, and will produce the same at the trial of this action.

"XXI. The defendant further alleges, on information and belief, that at the said trial there was introduced in evidence as Exhibit 1, a picture or pictures of the house No. 18 Berkeley Place, Brooklyn, where the plaintiff resided in the summer of 1896.

"XXII. The defendant further alleges on information and belief, that between the 1st of May, 1896, and the 15th of June, 1896, the said William J. Cruikshank, the plaintiff herein, visited the said house of the said Martha D. Lowe at No. 18 Berkeley Place, Brooklyn, in the nighttime, and there had adulterous intercourse with the said Martha D. Lowe, at that time being lawfully married to the said Maud Cruikshank.

"XXIII. The defendant further alleges that the said article, Exhibit 'A' of this amended answer, was and is substantially true.

"XXIV. Defendant further alleges on information and belief that the said Maud Cruikshank, by her counsel, is now prosecuting an appeal to the appellate division of the supreme court for the Second department, from the judgment and order entered in the office of the clerk of this court, as a result of the trial so had before Mr. Justice Johnson, and a jury, commencing on the 17th day of October, 1898.

"For a third, separate and distinct defence to the alleged cause of action set forth in the complaint, and in mitigation of any damages to which the plaintiff might otherwise seem entitled:

"I. Defendant here repeats and realleges each and every of the allegations, admissions and denials contained in the second defense of this amended answer with like effect as if here fully set forth.

"II. The defendant further alleges, on information and belief, that all the facts stated in this defense were known to it prior to the 18th day of October, 1898, and that the said matter or publication complained of, being Exhibit 'A' of this amended answer, was published by the defendant in good faith, and in the public interest, without any malice whatsoever, whether express or implied, towards either the plaintiff or any other person, but with the honest and worthy purpose of serving the public, and of supplying proper items of news and current interest, and for no other purpose, and further in the belief on the part of the defendant and its agents and servants, that the said article or matter complained of was true, and the defendant, in publishing the said matter or article, relied on the matters hereinbefore alleged to have been known to it prior to the date of the said publication.

"III. Defendant alleges that it now employs and did employ in the month of October, 1898, skilled and competent editors, correspondents, reporters, news collectors and other agents and servants at great cost and expense, and it received the said article Exhibit 'A' of this amended answer, from trustworthy and competent persons employed by it to collect news and items of interest for the public; that the same was transmitted by the aforesaid agents and servants, and was received by the defendant in its regular course of business, and was based upon proper information in the hands of the defendant and its aforesaid agents and servants.

"IV. The defendant further alleges that all the matters herein before stated, contained in the publication complained of, being Exhibit 'A' of this amended answer, were matters of current interest to the public, and current public news, and as such were published by the defendant without malice towards the plaintiff or any other person.

"V. The defendant further alleges on information and belief that the New York Evening Journal, a reputable newspaper published in the city of New York, on the 17th day of October, 1898, published an article of which a true copy is hereto annexed marked 'B,' and made a part of this amended answer.

"VI. The defendant further alleges that in the making of the publication of Exhibit 'A' complained of in this action, it had a right to and did rely upon the matter contained in Exhibit 'B' in an honest belief that the matter contained in Exhibit 'B' was true.

"VII. Defendant further alleges on information and belief, that other reputable daily newspapers published in the city of New York, on the 17th day of October, 1898, published articles substantially similar to Exhibits 'A' and 'B' of this amended answer, and that in making the publication of Exhibit 'A' of this amended answer the defendant had a right to and did rely upon the said articles so published in the said daily newspapers published in the city of New York, in the honest belief that the matter contained in the said articles was true.

"For a fourth, separate and distinct defence to the alleged cause of action in the complaint contained:

"I. The defendant here repeats and realleges each and every of the allegations, denials, and admissions, contained in the second and third defenses of this amended answer, with like effect as if here fully set forth.

"II. The defendant further alleges that all the matters set forth in Exhibit 'A' of this amended answer were contained substantially and specifically in

certain judicial proceedings instituted by Maud Cruikshank against her husband, William J. Cruikshank, the plaintiff herein, in the supreme court, Kings county, the same being an action for divorce commencing in the month of June, 1896, and the subsequent proceedings had in said action resulting in its being referred to Frederick H. Cooke, Esq., as referee, and the report of the said Cooke, and the report and decision filed in the office of the clerk of this court, deciding that the said William J. Cruikshank, the plaintiff herein, committed adultery with the said Martha D. Lowe, and the subsequent decree entered in the office of the clerk of this court dissolving the marriage between the said Maud Cruikshank and the said William J. Cruikshank, the plaintiff herein, and the subsequent proceedings commenced in the month of July, 1897, by the said William J. Cruikshank, the plaintiff herein, to reopen and set aside the said decree, and the amended and supplemental answer served by William J. Cruikshank, the plaintiff herein, and the issues framed by the court thereon, which resulted in a trial before Mr. Justice Johnson and a jury in Kings county on or about October 17, 1898, and the matters contained in Exhibit 'A' of this amended answer, and each and every of the facts and matters therein stated was a fair and true report of certain steps taken in or the substance of the said judicial proceedings, and of statements made by witnesses or counsel or other interested parties therein and becoming necessary and material parts of the said judicial proceedings, and that Exhibit 'A' of this amended answer was a fair comment and criticism thereon and a fair comment and criticism of the pleadings and other papers on record in said judicial proceedings, and the defendant alleges that the said matter or publication complained of and the whole thereof being Exhibit 'A' of this amended answer was published by it in good faith and without malice whether express or implied towards either the plaintiff or any other person.

"III. The defendant further alleges that the said proceedings so had in the supreme court, Kings county, as aforesaid, were and are public, official and judicial proceedings, and that the pleadings and other papers filed therein, and the statements of witnesses and counsel or other interested parties, are a fair and true criticism or comment upon the evidence bearing upon the said proceedings or any of the matters therewith connected, being necessary or material part thereof or pertinent or relevant thereto, were and are free to all the world, and no liability could or can attach to the defendant for publishing a true and fair report of the same.

"IV. The defendant alleges that by reason of the foregoing and of the various statutes of the state of New York, and the rules of law therein prevailing, the said matter or publication complained of was and of right ought to be privileged and as such no cause of action accrues."

W. M. Rosebault, for the motion.

J. W. Gerard, Jr., opposed.

GAYNOR, J.   This answer (set out above in full) is a sample of the unscientific and degenerate pleadings which have grown to be common in this part of the state, to the great perplexity and annoyance of trial judges.   It takes a tedious perusal of them at the trial to find out what they mean, or, as is most usual, that they mean nothing.

The complaint is a scientific and precise pleading in substance that the defendant falsely published of the plaintiff that in the trial of a divorce action between him and his wife, flashlight photographs were introduced which showed this plaintiff and a woman alleged by his wife in the said divorce action to be his paramour, in a way that was evidence of their being in adultery, thereby charging that the plaintiff was guilty of adultery with the said woman.   The answer could contain (1) a general denial of the complaint, or specific denials of parts of it;   and then (2) any new matter, i. e matter outside of the issue made by such denial or denials, i. e. matter which could not be given

in evidence under such denial or denials, but constituting a "defence" to the action, i. e. that the charge of adultery complained of was true; and also (3) any new matter not constituting a "defence," but only a "partial defence," i. e. matter showing a lack of malice in the defendant, and which could therefore go in mitigation of that smart-money damage which may be given for malice only (the actual damage done by a libel, as by any other tort, being of course not subject to mitigation or whittling down). This is the way of pleading established by the Code of Civil Procedure (sections 500, 507, 508). It is simple enough, and a scientific, precise and brief answer could easily be framed in accordance with it. But this answer seems to be framed on no rule or theory whatever. It seems to have been drawn by a layman, except for its verbiage.

It starts out that "for a first, separate and distinct defence" it (1) "admits" a specified allegation of the complaint, and (2) "denies each and every other allegation in the complaint contained." To say a "first" defence would suffice. To add that it is "separate and distinct" can only be from a habit of useless verbiage. And to call an "admission" a "defence" is strange indeed. An admission is in fact no necessary part of an answer at all. And indeed to call a general denial a "defence" is not much better. In the nomenclature and terminology of pleading a denial is not called a "defence" but a "denial." First in an answer comes a denial or denials, and then a "defence," if there be any, i. e. an allegation of new matter which cannot be given in evidence under a denial, but constitutes a defence, and to prove which the burden is on the defendant. Flack v. O'Brien, 19 Misc. Rep. 399, 43 N. Y. Supp. 854; Green v. Brown, 22 Misc. Rep. 279, 49 N. Y. Supp. 163; Von Hagen v. Manufacturing Co., 22 Misc. Rep. 580, 49 N. Y. Supp. 465.

Next in this answer comes a so-called "second, separate and distinct defence," made up of the same admission over again as is in the first, and then of (subdivisions 2 to 7, inclusive) several specific denials of particular allegations of the complaint, with an affirmative allegation here and there. This admission was needless in the first place, and its repetition here is redundant folly; and these denials are mere redundancies, and should also be struck out. Code Civ. Proc. § 545. They are all embraced in the previous general denial.

Then comes (subdivision 8) an irrelevant and scandalous allegation that the plaintiff ill-treated his wife, which must be struck out. Next (subdivisions 9, 10, 11, 15, 16, 17, 18, 19, 20 and 24) come allegations of particulars which at best can only be deemed allegations of proposed evidence. Whether such matter be admissible or inadmissible as evidence makes no difference. It can be no part of a pleading. If (for instance) there be a judgment against the plaintiff, as pleaded, establishing the adultery alleged in the publication, and it is admissible as evidence to establish a defence, i. e. the truth of the publication, there is no more reason to plead it than to plead a letter written by the plaintiff admitting his guilt, in order that it may be admitted in evidence.

Next comes what is called a "third, separate and distinct defence" to the cause of action "and in mitigation" of damages. Subdivision

1 is that the "defendant here repeats and realleges each and every of the allegations, admissions and denials contained in the second defence." Denials have no place in a "defence," i. e. in what the Code calls a defence in pleading. Section 500. They are mere surplusage there, and must be disregarded. A defence can contain only new matter, i. e. matter which cannot be given in evidence under a denial, but has to be affirmatively pleaded by the defendant in order that he may give evidence of it. If a defence, i. e. of new matter, should be demurred to as not sufficient to constitute a defence (i. e. that the new matter is not sufficient to constitute a defence), the fact that the pleader had incorporated in the new matter a repetition of a previous general or special denial could make no difference. The demurrer is to the defence, i. e. the new matter, and the repetition of the denial there would be irrelevant matter, which may always be disregarded in a pleading. There is one decision seemingly to the contrary, but it is by a divided court, and contrary to the provisions of the Code and other decisions, and not deemed authoritative. Fletcher v. Jones, 64 Hun, 274, 19 N. Y. Supp. 47. It would be just as reasonable to say that such a defence of new matter was not demurrable because it contained any other irrelevant statement. And regardless of this, to the extent that this subdivision repeats the things in the second defence which must be struck out as above indicated, such repetition must be struck out also. These things are no more relevant or permissible here than there; or if any of them be relevant as a "partial defence," then it must be here fully pleaded. And the same holds good in respect of the allegations repeated from the said second defence in subdivision 2 of this third defence.

Then comes a so-called "fourth, separate and distinct defence," to which the foregoing also applies. And in conclusion it may be said that the useless use of these words "separate and distinct" does not seem to have induced the pleader to be at all separate or distinct, the pleading being on the contrary a confused and bungling mass.

An answer could be drawn on one sheet of paper which would enable the defendant to give in evidence all that this answer stands for, viz.: An answer in just so many words (1) denying each and every allegation in the complaint contained except that the defendant is a corporation, and then pleading (2) "for a defence" that the publication is true, viz., that the plaintiff did commit adultery with the said (naming her) at (giving time and place). Then if there be any extrinsic fact known to the defendant at the time of the publication, and showing lack of malice, which could not be given in evidence under the general issue it could be pleaded as a second defence, i. e. as a partial defence, i. e. in mitigation of smart-money damage.

The motion is granted with $10 costs.